**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4144-16T1

STATE OF NEW JERSEY,

Plaintiff-Respondent,

v.

MARCUS L. REDDICK, a/k/a
MARCUS LEE REDDICK,

Defendant-Appellant.

______________________________

Submitted January 8, 2019 – Decided March 13, 2019

Before Judges Fisher and Suter.

On appeal from Superior Court of New Jersey, Law Division, Salem County, Indictment No. 15-06-0306.

Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa A. Aiello, Assistant Deputy Public Defender, of counsel and on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (David Galemba, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant was arrested at a motor vehicle stop for a controlled dangerous substance (CDS) offense. As a result of a search of his person by three police officers, defendant filed complaints against the three officers (and, mistakenly, a fourth) for sexual assault; those charges were later dismissed and the State, in turn, charged defendant with four counts of fourth-degree false swearing, N.J.S.A. 2C:28-2(a). At the conclusion of a bench trial, defendant was acquitted of one and convicted of three counts of false swearing; he later pleaded guilty to third-degree possession of a controlled dangerous substance (CDS) with the intent to distribute, N.J.S.A. 2C:35-5(b)(3). At sentencing, the judge directed that two of the three false-swearing convictions run consecutively to each other and consecutively to the sentence imposed on the CDS conviction. We affirm defendant's false-swearing convictions[1] but conclude the terms imposed on the false-swearing convictions should all have been concurrent.

On January 27, 2015, defendant was a passenger in a vehicle that was stopped because it was being driven without its headlights in operation. Three police officers, a sergeant and two patrol officers, approached the vehicle; one

---

[1] It is not clear whether defendant's appeal – when initiated – sought review of the judgment of conviction in the CDS matter. But it is clear the arguments in defendant's brief challenge only the judgment in the false-swearing matter.

claimed to smell burnt marijuana. When asked, defendant told the officers he had marijuana in his pocket. Defendant was arrested, and a search of the vehicle uncovered a gun in the center console.

At the scene, a woman who knew the vehicle's driver, approached the sergeant and informed him that defendant had "drugs in his ass . . ."; on the way to the police station, the sergeant advised defendant of his Miranda[2] rights and told him he knew he had more drugs. Defendant denied it.

Once at the police station, officers took defendant to a holding cell, where defendant was thoroughly searched, including in the buttocks area. He took offense, complaining this search was illegal and excessive. The officers had defendant sit while they called the prosecutor's office to seek guidance about the search's continuation. The police sergeant testified he was told he did not require a warrant but not to continue the search on camera "in case . . . there was any exposure of . . . skin or private area" because a female dispatcher was on duty.

The police sergeant told defendant of what he had been advised and stated the search would continue in a nearby bathroom. Defendant again

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

protested, saying several times: "I would like to stay on camera, please." The police sergeant denied that request but said he would run an audio recording.

The police sergeant testified that during the subsequent search he "used [defendant's] own pants" to grab a plastic bag of cocaine, so no part of defendant was exposed. The sergeant acknowledged he "technically" reached into defendant's pants to recover the bag.

During the search, defendant repeatedly called out to the driver of the vehicle, who was in an adjacent room, protesting and describing what the sergeant was doing. After the search, defendant continued to complain the search was illegal and that he had been physically violated.

About two weeks later, defendant filed complaints against the police sergeant and one of the patrol officers, alleging they sexually assaulted him by digitally penetrating his rectum during the search. He filed a third complaint, which he intended to direct at the other involved patrol officer, but defendant mistakenly named an officer not on duty that night. Realizing his error, defendant returned two weeks later to amend the complaint. Defendant testified at the false-swearing trial that he attempted to withdraw the erroneous third complaint, but the court administrator told him only a prosecutor had that authority. As a result defendant filed a fourth complaint, this time naming the

other officer involved in his arrest and search. All four of these complaints were dismissed when a judge found a lack of probable cause.

Upon the dismissal of the complaints asserted against the police officers, defendant was charged with four counts of false swearing. Those charges were the subject of a three-day bench trial at the conclusion of which the judge acquitted defendant of the one mistakenly-filed false-swearing complaint, but convicted him on the other three.

With the disposition of the false-swearing charges, defendant entered into a plea agreement pursuant to which he pleaded guilty to CDS possession with the intent to distribute and was sentenced to a six-year prison term with a three-year period of parole ineligibility. The judge also sentenced defendant on the three false-swearing convictions to one eighteen-month prison term, with an eight-month period of parole ineligibility, and two fifteen-month prison terms, with seven and one-half months of parole ineligibility. The latter two terms were ordered to run concurrently with each other but consecutively to the eighteen-month term with an eight-month parole ineligibility period. The judge also ordered that the prison term imposed on the CDS conviction run consecutively to the aggregate of the false-swearing terms.

Defendant appeals, and argues:

> I. [DEFENDANT'S] CONVICTIONS MUST BE REVERSED BECAUSE, IN VIOLATION OF [DEFENDANT'S] FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, THE TRIAL COURT PERMITTED THE PROSECUTOR AT THE TRIAL ON FALSE SWEARING TO QUESTION [DEFENDANT] ABOUT HIS PENDING DRUG CHARGES.
>
> II. [DEFENDANT'S] CONVICTIONS FOR FALSE SWEARING CANNOT STAND BECAUSE THE TRIAL COURT'S VERDICT OF GUILT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
>
> III. THE TRIAL COURT ERRED IN ORDERING THE SENTENCES ON COUNTS ONE AND FOUR . . . TO RUN CONSECUTIVELY.

After considering defendant's arguments, we find the first two points lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We agree, however, in considering defendant's third point, that the judge abused his discretion by imposing consecutive terms on two of the three false-swearing convictions.

We first add a few comments to our disposition of Point I, and then explain why, after considering defendant's Point III, we reverse the judgment insofar as it imposes consecutive terms on two of the three false-swearing convictions.

# I

To put defendant's first argument in perspective, we start with the fact that in managing the multiple charges against defendant, the judge acceded to the prosecutor's request that the false-swearing charges be tried first. With the CDS charges still looming, defendant took the stand to defend himself against the false-swearing charges. That circumstance gave rise to defendant's Point I, in which he claims the judge erred in allowing the prosecutor to elicit from him information that tended to incriminate him in the CDS matter during the following cross-examination:

> Q. So it's your testimony that that's where that sexual assault occurred, right there?
>
> A. When he – yeah, as soon as he touched me like that, it was a sexual assault.
>
> Q. Okay.
>
> A. I didn't give him consent to touch me like that.
>
> Q. Okay. All right. So it had nothing to do with the fact that you had a wad of crack cocaine in your pants?

Defendant objected for a number of reasons, all of which the judge overruled. Of interest is defendant's objection that the question as framed had a "tend[ency] to incriminate" him in the CDS matter. The judge overruled that

objection, leading defendant to thereafter acknowledge the presence of CDS in his possession during the search, as cross-examination continued:

> Q. All right, for the fourth time. It is your testimony that you moved away from [the police sergeant] because he was attempting to penetrate your anus with his finger, on the outside of your clothing, and not because you had a wad of suspected CDS in your pants back there?
>
> A. Correct.
>
> Q. Okay. So it had nothing to do with the suspected CDS. It was because he was trying to penetrate your . . . anus with his finger?
>
> A. Yes.

We agree that the judge mistakenly required a response from defendant to these questions because it unnecessarily tended to call upon defendant to incriminate himself in the pending CDS matter.

The phrasing of these questions was unnecessary because whatever the sergeant was trying to remove from defendant's pants was irrelevant to the false-swearing charges. The uses of phrases like "wad of crack cocaine" or "suspected CDS" in this questioning could have been replaced with a word like "something" or "an object" and the relevant facts would have been permissibly elicited without forcing defendant to acknowledge CDS possession – a fact relevant only to the pending CDS charge.

Although the judge's ruling on the defense objection was mistaken, it had no future bearing on the CDS matter, as defendant later pleaded guilty. Harm would have befallen defendant from the scope of this questioning only if defendant went to trial on the CDS matter and if the State then sought to use the false-swearing testimony as proof of defendant's CDS possession. Since those things never occurred, we conclude the error committed during the false-swearing trial was harmless.

II

We recognize trial judges have wide discretion when sentencing a defendant. State v. Dalziel, 182 N.J. 494, 500 (2005). When a judge follows the applicable statutory guidelines, identifies and properly weighs all applicable aggravating and mitigating factors, and finds the evidence in the record sufficient and credible, then the sentencing decision will not be disturbed, State v. Natale, 184 N.J. 458, 489 (2005), absent a determination that the sentence was "clearly unreasonable," State v. Carey, 168 N.J. 413, 430-31 (2001), or "shock[ing] [to] the judicial conscience," State v. O'Donnell, 117 N.J. 210, 215-16 (1989). Our focus here is not on the particular prison terms imposed on the false-swearing convictions but on the decision to impose consecutive terms.

When a judge considers whether to impose consecutive or concurrent sentences, the factors outlined in State v. Yarbough, 100 N.J. 627 (1985), come into play. These factors acknowledge a policy that "there can be no free crimes in a system for which the punishment shall fit the crime," id. at 643, and, so, a judge must consider "whether or not":

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;
>
> (e) the convictions for which the sentences are to be imposed are numerous.
>
> [Id. at 643-44.[3]]

Because they are to "be applied qualitatively, not quantitatively," Carey, 168 N.J. at 427, a judge is empowered to impose consecutive sentences even when

---

[3] Yarbough includes other factors, but the first factor – "no free crimes" – states the overall purpose for imposing a consecutive term, and the others – with the exception of the subparts of the third factor quoted above – all express procedural considerations unhelpful in determining whether to impose consecutive or concurrent terms. Carey, 168 N.J. at 423.

a majority of the factors favors concurrent terms, id. at 427-28. In making this decision, a judge must decide if the factor given great weight "'renders the collective group of offenses distinctly worse than the group of offenses would be were that circumstance not present.'" Id. at 428 (citation omitted).

The State contends that in filing the complaints against the officers, defendant committed separate acts, at different times, against multiple victims. Any truth in that assertion is at best an overestimation of what occurred. In suggesting the groundwork for this conclusion, the judge emphasized defendant's return two weeks after filing the original three complaints to file another. The judge reasoned these were distinct and independent events because defendant took the time to contemplate the last filing.

Although the judge's statement was accurate, defendant's return to lodge a fourth complaint resulted from a desire to correct an earlier mistake. This was borne out in the court administrator's testimony, which confirmed that defendant sought to withdraw the erroneous complaint against the uninvolved officer but wasn't permitted. The only fair way of examining defendant's overall conduct is to view it as a single act with multiple victims.

To be sure, it has been held that multiple victims alone may support consecutive terms. In Carey, the Court held that in vehicular homicide cases

with multiple victims, a judge should "ordinarily" impose "at least two consecutive terms." 168 N.J. at 429. See also State v. Molina, 168 N.J. 436, 442 (2001). But we view the circumstances here differently because, in Carey, for example, two children lost their mother, two adults lost their college-aged son, and two accident survivors experienced painful physical therapy and multiple surgeries. 168 N.J. at 428-29. No one was orphaned here. No one died. No one was physically injured. The police officers were inconvenienced until the complaints were dismissed and expunged. So, the multiple-victims factor by itself – and that's all there is here – was insufficient to warrant consecutive terms for the false-swearing convictions, particularly when the judge imposed the maximum prison term on one.

We conclude that the imposition of consecutive terms was shocking to the judicial conscience.

* * *

To summarize, we agree with defendant's Point I that the judge erred in requiring potentially incriminating testimony but find that error harmless. We find no merit in defendant's Point II. As for Point III, we agree that the judge erred in imposing consecutive terms on the false-swearing convictions and

remand for entry of an amended judgment of conviction that conforms with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION