# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5275-16T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.H.,

    Defendant-Appellant.

_____

> Submitted February 25, 2019 – Decided July 15, 2019
>
> Before Judges Sabatino and Sumners.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 15-07-0353.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Lauren Stephanie Michaels, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Richard T. Burke, Warren County Prosecutor, attorney for respondent (Kelly A. Shelton, Assistant Prosecutor, of counsel and on the brief).
>
> Appellant filed a pro se supplemental brief.

PER CURIAM

Tried before a jury, defendant J.H.[1] was convicted of third-degree endangering the welfare of a child – sexual conduct by a non-caregiver, N.J.S.A. 2C:24-4(a)(1), for masturbating on his front porch in view of a fourteen-year-old boy walking home from school. Defendant contends for the first time on appeal that he was deprived of due process and a fair trial because the State relied upon the inadmissible lay opinion testimony of a police detective who identified defendant in a video recorded by defendant's home surveillance camera system as the man depicted masturbating on the same porch minutes after the victim's observation. Defendant also contends the trial judge erred in sentencing him to a five-year term at the Adult and Diagnostic Treatment Center by misapplying the aggravating and mitigating factors. In a pro se supplemental brief, defendant contends the victim lied, his surveillance system should not have been seized, and his attorney was ineffective. Because we conclude that admission of the detective's testimony was not plain error, defendant's sentence was consistent with our sentencing guidelines, and the pro se arguments are without merit, we affirm.

---

[1] We use initials to identify defendant and others to protect the identities of the victims. See R. 1:38-3(c)(9), (12).

I

We briefly summarize the trial testimony that is relevant to the issues before us. M.F. testified that at approximately 3:20 p.m. on February 26, 2015, he was walking home from school when he saw a naked man masturbating while standing on the front porch of a house located across the alleyway from M.F.'s home. M.F., a fourteen-year old middle school student at the time and sixteen at the time of trial, was one hundred percent certain the man was masturbating. M.F. went into his home when the man gestured to him to come over to the man's porch.

When M.F. got in the house, he told his mother, stepfather, siblings, and J.P., a family friend who lived with M.F.'s family, about the man's behavior. J.P testified M.F. appeared to be "a little bit shocked, not overly disheveled but surprised." Estimating it was around 3:30 p.m., J.P. went outside and saw "a man's head kind of bob in and out of the [front] doorway" and he "occasionally heard, 'suck it.'" J.P. also claimed the man was masturbating while standing in the doorframe, and then retreated inside the house after stepping onto the porch to urinate by his door. M.F. never went back out, so he did not observe anything that J.P. allegedly saw. Neither M.F. nor J.P. identified the man in- or out-of-court.

A-5275-16T3

Assisting another officer, Phillipsburg Police Lieutenant John Maczko, went to defendant's house due to a call to the police. When he went inside the house, he noticed a surveillance camera mounted on the wall of defendant's living room pointing towards the door. He advised the Warren County Prosecutor's Office of the surveillance camera.

Warren County Prosecutor's Office Detective Melissa Fehr was subsequently assigned to investigate the matter and obtained a search warrant to confiscate the surveillance camera system reportedly seen in defendants' home by Lt. Maczko. Accompanied by Phillipsburg police officers, she then went to defendant's home eight days after the reported offense to confiscate the surveillance camera system. Observing that the system was operational and its date and time settings were accurate, the detective seized it along with a DVR system that was connected to it. She later analyzed the recordings on the system and burned a portion of them on a DVD.

The jury was shown the DVD, which covered the time, 3:31p.m. to 3:54 p.m., that related to the reports and J.P.[2] Defense counsel stated he had no

---

[2] There is no indication in the record as to why the jury was not shown a recording from defendant's surveillance system during the time – around 3:20 p.m. – when M.P. observed a man masturbating

objection to the DVD being admitted into evidence and being played to the jury with Detective Fehr's narration.[3] The video did not have any audio. At 3:31 p.m. on the recording, a naked man viewed solely with his back to the camera without his face visible – due to the camera's positioning – cracked open a door. The man, leaning down to look outside while standing in the doorway, apparently touched his genitals and then closed the door again; this took place several times. He also sat down and looked out a window. M.F.'s house was to the right of defendant's front door. Without objection from the defense, Detective Fehr narrated the man's actions depicted in the video and identified him as defendant. Prior to her testimony and in-court identification of defendant, the detective had met defendant once: when she went to execute the search warrant for the surveillance system.

At the end of the State's case, defendant moved for an acquittal, arguing there was no proof that the man masturbating was him because neither M.F. nor J.P. identified him as the man they saw masturbating. The trial judge rejected the argument. He determined that giving the State the benefit of all its favorable evidence – direct and circumstantial – a jury could reasonably infer from

---

[3] Defendant objected to Detective Fehr's testimony regarding the time sequence on the video; however, it was overruled.

Detective Fehr's testimony that defendant was the man in the video, which provided a "temporal and physical connection to the time and place of the alleged conduct [(masturbating in the presence of M.F.)] charged in the indictment."

Defendant exercised his right not to testify, and did not present any witnesses. Following deliberations, the jury found him guilty of the sole charge of third-degree endangering the welfare of a child – sexual conduct by a non-caregiver.

At sentencing, the judge agreed with the State to apply aggravating factors three (the risk of re-offense), six (the extent of defendant's prior criminal record and the seriousness of the current offense), and nine (the need to deter) N.J.S.A. 2C:44-1(a)(3), -1(a)(6), and -1(a)(9). In reaching his findings, the judge noted defendant's two-decade long history of sexual offenses, which included offenses against children and his resulting Megan's Law status. Based upon defendant's repetitive and compulsive behavior, the judge rejected his request to apply mitigating factors one (defendant's conduct neither caused or threatened serious harm), two (defendant did not intend or cause serious harm), and four (substantial grounds tending to excuse or justify defendant's conduct). N.J.S.A. 2C:44-1(b)(1), -1(b)(2), and -1(b)(4). As mentioned, defendant was sentenced

6

to a five-year prison term, to be served at the Adult and Diagnostic Treatment Center.

II

On appeal, defendant through counsel presents the following points for our consideration:

> POINT I
>
> INADMISSIBLE OPINION TESTIMONY FROM THE INVESTIGATING DETECTIVE - - IDENTIFYING DEFENDANT AS THE PERSON ON THE SURVEILLANCE FOOTAGE AND NARRATING WHAT SHE BELIEVED HE WAS DOING - - DEPRIVED DEFENDANT OF DUE PROCESS AND A FAIR TRIAL. (Partially raised below).
>
> POINT II
>
> A REMAND FOR RESENTENCING IS REQUIRED BECAUSE THE JUDGE ERRED IN FINDING AND WEIGHING AGGRAVATING AND MITIGATING FACTORS.

We first address defendant's first brief point that he was deprived of due process and a fair trial because Detective Fehr's testimony that he was the man depicted masturbating in the DVD was inadmissible opinion testimony as proscribed by State v. Lazo, 209 N.J. 9, 23-24 (2012), and State v. McLean, 205 N.J. 438, 460 (2010).

7

In considering defendant's argument, we view it under the plain error standard because he did not object to Detective Fehr's testimony during the trial. We agree with the State that defendant's claim that he "partially raised" the argument is not supported by the record. While defendant unsuccessfully argued for acquittal based upon the absence of testimony by M.F. and J.P that he was the man masturbating on his porch, he never sought to exclude Detective Fehr's testimony that he was the man in the video and what he was doing. When there is a failure to object, the defendant must establish the conduct constitutes plain error under Rule 2:10-2. State v. Feal, 194 N.J. 293, 312 (2008). Plain error to reverse a conviction is warranted when the error is "of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2.

Turning to the specifics of defendant's attack on Detective Fehr's testimony, a lay witness may testify "in the form of opinions or inferences" if "rationally based on the perception of the witness" and if the testimony "will assist in understanding the witness' testimony or in determining a fact in issue." N.J.R.E. 701. "[T]estimony in the form of an opinion, whether offered by a lay or an expert witness, is only permitted if it will assist the jury in performing its function." McLean, 205 N.J. at 462. "The Rule does not permit a witness to offer a lay opinion on a matter . . . as to which the jury is as competent as he to

form a conclusion[.]" Id. at 459 (internal quotation marks and citation omitted). Furthermore, a police witness is not permitted to offer an opinion regarding a defendant's guilt. State v. Frisby, 174 N.J. 583, 593-94 (2002) (disapproving police testimony that opined regarding innocence of one person and inferentially the guilt of the defendant); State v. Landeros, 20 N.J. 69, 74-75 (1955) (holding that police captain's testimony that defendant was "as guilty as Mrs. Murphy's pet pig" caused "enormous" prejudice warranting reversal).

These principles apply to opinions regarding an offender's identity. "In an identification case, it is for the jury to decide whether an eyewitness credibly identified the defendant." Lazo, 209 N.J. at 24. A police officer may not "improperly bolster or vouch for an eyewitness' credibility and thus invade the jury's province." Ibid.

The Lazo Court reviewed federal authority on whether a lay police witness may opine that a defendant is depicted in a crime scene photograph. The Court noted that one federal court held that a lay opinion "is permissible where the witness has had sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful." Id. at 22 (internal quotation marks and citation omitted). Whether the opinion is helpful in turn depends on the witness's knowledge of the defendant's appearance at the time of the crime,

the defendant's dress, and "whether the defendant disguised his appearance during the offense or altered her looks before trial, and whether the witness knew the defendant over time and in a variety of circumstances." Ibid. (internal quotation marks and citation omitted). "[C]ourts recognize that when there is no change in defendant's appearance, juries can decide for themselves — without identification testimony from law enforcement — whether the person in a photograph is the defendant sitting before them." Id. at 23.

The Court cited a decision finding it error to admit an officer's opinion that a defendant was depicted in a bank surveillance photo where the officer's opinion "was based entirely on his review of photographs . . . and witnesses' descriptions . . . ." Ibid. (internal quotation marks and citation omitted). Another factor in determining whether to permit a lay opinion on identification is "whether there are additional witnesses available to identify the defendant at trial." Ibid.

Considering this authority, the Lazo Court held it was error to permit a detective to testify he believed the defendant's arrest photo closely resembled a composite sketch that was based on the victim's description of her assailant. Id. at 24. The detective did not witness the crime; did not know the defendant; and relied solely on the victim's description. Ibid. "Nor was there a change in

appearance that the officer could help clarify for the jurors; they could have compared the photo and the sketch on their own. Finally, the sole eyewitness told the jury what he observed firsthand." Ibid.

Applying these principles, we conclude there was no unjust result in Detective Fehr's testimony that defendant was the man depicted in the video and that he appeared to be masturbating. Detective Fehr made a comparison of the man she had contact with when she executed the search warrant, albeit minimal, prior to viewing the video with the man herself. Having viewed the video as part of the record, we cannot conclude the detective's testimony deprived defendant of a fair trial. While we concede that she may have been no more competent than the jury to scrutinize the video and defendant's appearance at trial to determine whether defendant was the man in the video, we cannot conclude her testimony created an unjust result that contributed to his conviction.

Most importantly, she did not opine on defendant's guilt by stating defendant was the perpetrator of the crime – the man who masturbated in front of M.F. Defendant's guilt was based upon the circumstantial evidence that he was in the house when Lt. Maczko investigated the incident in which a man was seen masturbating on the porch. Apparently, there was no evidence that there

was any other man in the house. The jury moreover was able to make its own independent assessment of the video and defendant's appearance in court to determine whether defendant was the man who endangered the welfare of M.F.

In addition, even if we were to agree with defendant that Detective Fehr should not have been allowed to give the testimony in question, we conclude it was harmless error. "An evidentiary error will not be found 'harmless' if there is a reasonable doubt as to whether the error contributed to the verdict." State v. J.R., 227 N.J. 393, 417 (2017). Said another way, "[t]he harmless error standard requires that there be some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." Lazo, 209 N.J. at 26 (internal quotation marks and citation omitted). The jury had sufficient evidence independent of Detective Fehr's testimony to find defendant guilty.

III

Defendant's argument in Point II is that the judge erred in considering aggravating factors three, six and nine, and should have considered mitigating factors one, two and four. Had the judge done so, defendant claims he would

have received a sentence in the mid-range of a third degree offense, a period of one to five years. We disagree.

Our review of a criminal sentence is limited; a reviewing court must decide, "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Under this standard, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly identifies and balances the factors and their existence is supported by sufficient credible evidence in the record, this court will affirm the sentence. See State v. Carey, 168 N.J. 413, 426-27 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996).

Defendant's contentions are without sufficient merit to warrant discussion, Rule 2:11-3(e)(2), and we affirm substantially for the thoughtful reasons expressed by the judge at sentencing; the sentence does not shock our judicial conscience.

IV

Finally, in considering defendant's pro se supplemental brief, we conclude it is procedurally deficient under Rule 2:6-2(a)(6) because it fails to cite any law with appropriate reference to the record to support his arguments. See State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). In addition, from what we can glean from his arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). Furthermore, defendant's claims of ineffective assistance of his trial counsel should not be presented on direct appeal, but may be raised in a future petition for post-conviction relief. State v. Preciose, 129 N.J. 451, 460 (1992). We do not pass judgment on the viability of such claims now.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5275-16T3