SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Edgar Torres (A-52-19) (083676)**

**Argued November 10, 2020 -- Decided May 11, 2021**

**LaVECCHIA, J., writing for a unanimous Court.**

The Court considers the imposition of an aggregate seventy-year sentence, subject to an eighty-five percent parole disqualifier, on defendant Edgar Torres for his role in five robberies. In State v. Yarbough, the Court sought to assist courts with the exercise of discretion when sentencing a defendant for multiple offenses by identifying factors to consider when weighing whether to impose consecutive or concurrent sentences. 100 N.J. 627, 635 (1985). In this matter, the Court again takes steps to promote the goals of uniformity, predictability, and proportionality in sentencing, while also awaiting further action by the New Jersey Criminal Sentencing and Disposition Commission, which may touch on some policy-laden sentencing arguments advanced in this appeal.

After defendant was convicted of three counts of first-degree armed robbery for his role in three robberies, the court sentenced him to forty years' imprisonment subject to an eighty-five percent parole disqualifier for the first of those convictions and to twenty years in prison for each of the other two convictions. The court ordered the twenty-year sentences to run concurrently to each other and to the forty-year sentence.

After a separate trial, defendant was convicted of first-degree armed robbery and second-degree robbery for his role in two other robberies. Defendant was sentenced to twenty years' imprisonment for the armed robbery conviction and to ten years' imprisonment for the second-degree robbery conviction, each subject to parole disqualifiers. The sentencing court imposed those terms consecutively, stating that the Yarbough factors counseled in favor of consecutive terms because each robbery was a separate offense. Without further elaboration, the court determined that defendant was to serve the aggregate thirty-year sentence consecutively to defendant's forty-year sentence imposed for the three other robberies.

As to the second sentence, the Appellate Division found that the sentencing court had failed to engage in a careful analysis of either the Yarbough factors or the real-time consequences of defendant's sentence. It remanded for a new sentencing hearing.

1

On remand, the court concluded that Yarbough required that defendant's sentences be imposed consecutively to each other and to the prior forty-year sentence. It sentenced defendant to the same aggregate seventy-year sentence subject to an eighty-five percent parole disqualifier. Thus, the court's sentence denies defendant the opportunity for parole until he reaches one hundred and two years of age.

Defendant again appealed his sentence, and the Appellate Division affirmed by summary order. The Court granted certification. 241 N.J. 91 (2020).

**HELD:** An explicit statement, explaining the overall fairness of a sentence imposed for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment and was lacking here. The lack of any overall assessment of the fairness of the decision to impose consecutive sentences compels reversal of defendant's sentence and remand for a new resentencing, and the Court provides important guidance regarding that essential assessment.

1. Prior to the enactment of the Code of Criminal Justice, sentencing decisions were guided by the view that punishment should fit the offender as well as the offense. To facilitate such defendant-oriented sentencing decisions, discretion to determine a sentence within the statutory range largely rested with the trial court. Dissatisfaction grew with this sentencing regime, whose critics suggested that it produced inconsistent and arbitrary results, and the Legislature began efforts to recodify the state's criminal statutes, including those governing sentencing. Ultimately, however, the Code generally preserved the discretion of trial courts by providing that when an offender is sentenced to imprisonment for more than one offense, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." See N.J.S.A. 2C:44-5. The Legislature nonetheless made it clear that a paramount goal in enacting the Code was to achieve greater uniformity in sentencing. The Legislature was also guided by the concept that punishment of crime should be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential. (pp. 16-20)

2. To advance those legislative principles, Yarbough identified a series of factors for sentencing courts to consider as a guide when determining whether to make sentences run concurrently or consecutively. The Court reviews the Yarbough factors and notes they seemed to hit the mark with one exception: factor six, which established an outer limit to the accumulation of consecutive sentences, was expressly disapproved by the Legislature, which amended N.J.S.A. 2C:44-5(a) in 1993 to clarify that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." Other than that rejection of the sixth factor originally identified in Yarbough, the Legislature has otherwise neither altered section 44-5 nor codified the remaining Yarbough factors. The precision of the legislative reaction clarifying section 44-5 to eliminate Yarbough's sixth factor may reasonably be interpreted as tacit approval of the remaining five factors. (pp. 20-23)

2

3.  Unlike some other states' sentencing laws or guidelines, New Jersey's Code does not contain a presumption in favor of either concurrent or consecutive sentences.  The five extant Yarbough factors that guide courts in that determination have been categorized as follows.  Factors two, four, and five do not relate directly to the facts of the offense and hence have little utility in the threshold assessment of consecutive or concurrent sentences.  Factor one under Yarbough -- "there can be no free crimes in a system for which the punishment shall fit the crime," 100 N.J. at 644 -- has been described as tilting in the direction of consecutive sentences because the Code focuses on the crime, not the criminal.  However, it is factor three that contains the evaluative core to a Yarbough analysis:  it identifies five sub-factors that generally concentrate on such considerations as the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims.  Beyond listing those informative factors, though, Yarbough does not direct an outcome, remaining true to the Code's failure to create either a presumption of consecutive or concurrent sentences for multiple offenses.  (pp. 24-25)

4.  That lack of a direction for a starting assumption, to the extent that it is problematic for promoting uniformity in sentencing, is compounded by the elimination of Yarbough's original factor six.  Insofar as the Yarbough factors were created to work together as a cohesive whole, that whole was conceived of as including an overall outer limit -- an ending assumption.  Because that outer check no longer exists, the analysis of the remaining evaluative subfactors is unmoored to any starting or ending sentencing guidepost.  Appellate review remains the final check on the discretion allotted to the sentencing court.  Thus, Yarbough's second factor requires a sentencing court to place on the record its statement of reasons for the decision to impose consecutive sentences, which statement should focus "on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted."  State v. Miller, 108 N.J. 112, 122 (1987).  (p. 26)

5.  Here, the court did not include an explicit assessment of the overall fairness of imposing the sentence consecutively to defendant's previously imposed forty-year sentence.  An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment.  It is the necessary second part to a Yarbough analysis, as Miller emphasized, and it remains the critical remnant of accountability imposed by Yarbough, since the legislative elimination of the outer limit imposed by factor six.  (pp. 26-27)

6.  Yarbough did not supplant the principle that courts have discretion over whether to impose consecutive sentences in appropriate cases.  The Yarbough criteria were adopted to channel that discretion, not to withdraw it; they are qualitative, not quantitative, and applying them involves more than merely counting the factors favoring each alternative outcome.  That caveat applies also to the "no free crimes" factor identified in Yarbough.

3

Courts must remain mindful that the discretion to sentence for multiple offenses runs in two directions, allowing concurrent sentencing as well as consecutive sentencing for the multiple offenses for which one defendant is being sentenced. Uniformity and predictability should not come at the expense of fairness and proportionality. A sentencing court's decision whether to impose consecutive sentences should retain focus on "the fairness of the overall sentence." Miller, 108 N.J. at 122. (pp. 28-29)

7. The imposition of consecutive sentences here must be reversed due to the lack of a fairness assessment. The Court requires an explicit explanation for the overall fairness of a sentence, in the interest of promoting proportionality for the individual who will serve the punishment. Furthermore, although courts primarily evaluate aggravating and mitigating factors when determining the length of individual sentences, sentencing is a holistic endeavor. A court performing the fairness assessment must be mindful that aggravating and mitigating factors and Yarbough factors, as well as the stated purposes of sentencing in N.J.S.A. 2C:1-2(b), in their totality, inform the sentence's fairness. The sentencing court's explanation of overall fairness provides a proper record for appellate review of the court's exercise of discretion. Appellate courts employ the general shock-the-conscience standard for review of the exercise of sentencing discretion in the arena of consecutive-versus-concurrent sentencing. Although the standard is deferential, that review is critical: at present, no guidelines have been created by the Legislature or been recommended by the Legislature's currently empaneled sentencing commission; appellate review of lengthy consecutive sentences is therefore the only check for pervading unfairness. The standard is not insurmountable, and appellate courts should bear that in mind when reviewing lengthy, aggregated consecutive sentences where the sentencing court has so few guideposts, and no outer limit, on which to rely. (pp. 30-33)

8. The fairness of a sentence cannot be divorced from consideration of the person on whom it is imposed. Assessing a sentence's overall fairness requires a real-time assessment of the aggregate sentence imposed, which perforce calls for consideration of a defendant's age. Age alone cannot drive the outcome, and the fairness assessment does not call for speculation or divination about the defendant's future behavior or life expectancy. But age is a fact that can and should be in the matrix of information assessed by a sentencing court, even in the deliberation over whether consecutive sentences are a fair and appropriate punishment -- proportional for the individual being sentenced. (pp. 34-35)

9. The Court took this case because the overall length of this sentence gave serious concern. The Court remands for meaningful review and resentencing utilizing the principles contained in this opinion. (p. 36)

**REVERSED and REMANDED for a new sentencing proceeding.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.**

SUPREME COURT OF NEW JERSEY

A-52 September Term 2019

083676

State of New Jersey,

Plaintiff-Respondent,

v.

Edgar Torres,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 10, 2020 | May 11, 2021 |

Scott M. Welfel, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Scott M. Welfel, of counsel and on the briefs).

Carey J. Huff, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Carey J. Huff, of counsel and on the briefs).

Alexander Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander Shalom and Jeanne LoCicero, on the brief).

Michael R. Noveck argued the cause for amici curiae Professors of Criminology (Gibbons, attorneys; Michael R. Noveck and Lawrence S. Lustberg, on the brief).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

A sentencing court's decision between imposing consecutive or concurrent sentences on a defendant for multiple offenses has the potential to drastically alter aggregate sentence length. In State v. Yarbough, this Court first addressed the standards that sentencing courts should use when imposing concurrent or consecutive sentences for multiple offenses under the Code of Criminal Justice (Code).[1] 100 N.J. 627 (1985). The Code had altered New Jersey's previous approach to sentencing, and although the new scheme offered guideposts and directions to courts with respect to much of sentencing, it left the concurrent/consecutive decision within the discretion of the sentencing court. N.J.S.A. 2C:44-5(a) states only that "multiple sentences shall run concurrently or consecutively as the court determines at the time of

---

[1] N.J.S.A. 2C:1-1 to :104-9.

2

sentence." There are just a few narrow exceptions where statutory direction exists on this subject. See N.J.S.A. 2C:44-5(b)(3), -5(c), and -5(h).

The Court in Yarbough sought to assist courts with the exercise of discretion when sentencing a defendant for multiple offenses by identifying factors to consider when weighing whether to impose consecutive or concurrent sentences, thereby furthering the Code's paramount goal of promoting "greater uniformity" in sentencing. 100 N.J. at 635. However, the difficulty of fashioning a satisfactory approach to sentencing offenders convicted of multiple offenses was not lost on the Yarbough Court. The topic was recognized then as one challenging many jurisdictions. Id. at 639-44. And it remains challenging, largely due to the complexity of the task.

The Yarbough Court took pains to provide clarity in its guidance while admitting that its efforts left room for continued improvement. Id. at 647 (noting that "much remain[ed] to be done" to further the goal of predictable uniformity in sentencing -- "a goal that we shall continue to seek"). To the extent that some courts, as evidenced in the present appeal, have interpreted Yarbough as circumscribing their ability to craft a just sentence, refinement and improvement of the Yarbough factors analysis appears necessary.

Through the years, our Court has sought again and again to underscore that concepts of uniformity, predictability, and proportionality in sentencing

3

birthed the <u>Yarbough</u> factors.  <u>See, e.g.</u>, <u>State v. Liepe</u>, 239 N.J. 359, 371-72 (2019); <u>State v. Carey</u>, 168 N.J. 413, 427-28 (2001).  In this matter, we again take steps to promote those goals, as we also await further action by the New Jersey Criminal Sentencing and Disposition Commission, which may touch on some policy-laden sentencing arguments advanced in this appeal.[2]

I.

A.

Between late 2010 and early 2011, a spate of three bank robberies occurred in Monmouth County.  Two of the robberies took place in Howell Township in December 2010 and January 2011, and a third occurred in Ocean Township on February 16, 2011.  Each featured a sole man who approached a bank teller, presented a firearm, and demanded cash.  Shortly after the third robbery, on February 25, 2011, defendant was arrested in connection with a police investigation into the robbery spree.

---

[2] It bears noting that although many states leave the decision to run sentences consecutively or concurrently to the discretion of the court, the American Law Institute's work on its updated Model Penal Code observes that several states' sentencing commissions have developed substantive guidelines or recommendations for courts to use, and <u>Model Penal Code:  Sentencing</u> § 6B.08 (Am. Law Inst., Proposed Final Draft 2017), entitled "Multiple Sentences; Concurrent and Consecutive Terms," includes recommended considerations for use by such sentencing commissions when developing guidelines for courts.

After receiving <u>Miranda</u>[3] warnings and waiving his rights, defendant gave a videotaped statement in which he confessed to all three robberies. Thereafter, on March 11, 2011, defendant was interviewed by police again. After re-waiving his <u>Miranda</u> rights, defendant confessed to two earlier bank robberies in Monmouth County: one in Farmingdale in November 2006 and another in Freehold in October 2009.

B.

Defendant was charged in a single indictment with eleven counts related to the robberies. The counts are organized in relation to the robberies' location and sequence in time.

For the 2006 Farmingdale robbery, defendant was charged with second-degree conspiracy to commit armed robbery contrary to N.J.S.A. 2C:5-2 and 2C:15-1 (Count One), first-degree armed robbery contrary to N.J.S.A. 2C:15-1 (Count Two), and second-degree possession of a weapon for an unlawful purpose contrary to N.J.S.A. 2C:39-4(a) (Count Three).

For the 2009 Freehold robbery, defendant was charged with first-degree armed robbery (Count Four) and second-degree possession of a weapon for an unlawful purpose (Count Five).

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

For the 2010 Howell robbery, defendant was charged with first-degree armed robbery (Count Six) and second-degree possession of a weapon for an unlawful purpose (Count Seven).

For the 2011 Howell robbery, defendant was charged with first-degree armed robbery (Count Eight) and second-degree possession of a weapon for an unlawful purpose (Count Nine); and for the 2011 Ocean robbery, defendant was charged with first-degree armed robbery (Count Ten) and second-degree possession of a weapon for an unlawful purpose (Count Eleven).

Defendant moved to sever the indictment into five separate trials. The State responded by urging the court to instead hold two trials, which the court determined to do. The court ordered that defendant first be tried on the three 2010 and 2011 robberies, after which he would face a second trial on the earlier 2006 and 2009 robberies.

At the conclusion of the first trial on November 9, 2012, defendant was convicted on Counts Six through Eleven, which constituted all six counts arising from the 2010 and 2011 robberies. Defendant's sentencing for those convictions took place on February 1, 2013.

Preliminarily, the court concluded that defendant was eligible for an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3(a). The court also merged each of the three unlawful-possession-of-a-weapon

6

convictions into the three first-degree robbery convictions. The court then sentenced defendant on Count Six, first-degree armed robbery, to a term of forty years in prison, subject to an eighty-five percent parole disqualifier under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On the other two first-degree armed robbery counts (Counts Eight and Ten), the court sentenced defendant to twenty and twenty years, respectively, and ordered those sentences to run concurrently to each other and to Count Six. The court did not explain its reasons for imposing concurrent sentences with respect to the two 2011 robberies. At the time of this first sentencing proceeding, the court stressed that the second trial would be wholly separate:

> Also, I want it abundantly clear that at the defense request there was a severance of these counts from the other counts. The other case is a clear separate and distinct series of criminal acts and will be treated as such. There is a status conference in the other armed robbery which is still pending for February 25th. The defendant will be produced before the [c]ourt at that time to discuss a trial date on the remaining counts. And I repeat, having granted the defense motion for severance, those are separate and distinct counts.

A second trial ensued concerning the 2006 and 2009 robberies, and on March 13, 2014, the jury reached its verdict, convicting defendant of first-degree armed robbery (Count Two), second-degree possession of a weapon for

7

an unlawful purpose (Count Three), and an amended lesser charge of second-degree robbery (Count Four).[4]

On May 2, 2014, defendant appeared for sentencing on his convictions from the second trial. The sentencing court found applicable three aggravating factors -- N.J.S.A. 2C:44-1(a)(3), (6), and (9) -- and found no mitigating factors. In pertinent part, defendant was sentenced to twenty years' imprisonment for the armed robbery conviction on Count Two and ten years' imprisonment on Count Four (second-degree robbery), each subject to NERA. The sentencing court imposed those terms consecutively, stating that the Yarbough factors counseled in favor of consecutive terms because each robbery was a separate offense:

> The Court is placing on the record two things: Number one, that the robberies of which this defendant was convicted both in the first trial and the second trial apply all the Yarbough standards. These are clearly separate offenses and he will be sentenced accordingly.

Without further elaboration, the court determined that defendant was to serve the aggregate thirty-year sentence consecutively to defendant's forty-year sentence imposed for the 2010 and 2011 robberies. As a result, defendant

---

[4] The court dismissed Count One, first-degree conspiracy to commit armed robbery, and the jury acquitted defendant on Count Five, possession of a weapon for an unlawful purpose.

8

would not begin serving the thirty-year portion of his aggregate sentence until he was seventy-seven years old.

Defendant appealed both of his convictions and sentences. Defendant's first conviction, on the three later-in-time robberies, was affirmed on appeal, and this Court denied certification. State v. Torres, 231 N.J. 316 (2017). That conviction is not part of this appeal.

With respect to defendant's appeal concerning the 2006 and 2009 robberies, the Appellate Division, in a separate unpublished decision, upheld defendant's convictions but agreed with defendant that the sentencing court had failed to engage in a careful analysis of either the Yarbough factors or the real-time consequences of defendant's sentence. Accordingly, the court vacated defendant's sentence and remanded for a new sentencing hearing.

Defendant was resentenced on October 6, 2017. Because the original sentencing judge had retired during the pendency of the appeal, a different judge conducted the resentencing hearing on remand. The resentencing court found that aggravating factors three, six, and nine applied while finding no mitigating factors. The court determined that there was a risk that defendant would commit another offense, especially in light of his criminal record, and highlighted the importance of deterrence. The court held that those considerations justified the imposition of the original sentences of twenty

9

years for the armed robbery offense and ten years for the second-degree robbery.

The court then turned to whether defendant's sentences should be imposed consecutively or concurrently under Yarbough. The resentencing judge acknowledged that defendant's extended criminal history was in large part driven by a decades-long addiction to drugs. However, the court explained that the ongoing nature of his drug addiction could not transform defendant's robberies into a singular course of action for purposes of a Yarbough analysis. The court stressed that the 2006 and 2009 robberies were separated by a substantial period of time, featured separate sets of victims, and involved threats of violence.[5]

> These sentences that on Count 4, that is to run consecutive to Count 2, the reason they're to run consecutively is that we're bound by the provisions of, the sentencing provisions of [Yarbough]. It's hard to conclude that there weren't two separate dates. And to suggest this is one ongoing course of conduct, I've already addressed. I can't so find. So these are two separate dates, separated by a substantial period of time.

---

[5] These considerations track the criteria set forth in Yarbough: "(3)(a) the crimes and their objectives were predominantly independent of each other; (b) the crimes involved separate acts of violence or threats of violence; (c) the crimes were committed at different times or separate places . . . ; (d) any of the crimes involved multiple victims." 100 N.J. at 644.

10

There are two sets of victims and [Yarbough] discussed the factors to be considered when determining whether a sentence should be concurrent or consecutive. And you pointed out yourself, Mr. Torres, again you're an intelligent man, there should be no free crimes, considered separate crimes or separate acts of violence or threats of violence. And pointing a gun, wherever you point it, if you point it [at] the money, that's a violent act. A gun is capable of immediately terminating one's life. To suggest that that's not a violent act is simply not the case.

Consider, the Court is required to consider pursuant to [Yarbough] whether the dates on which these acts occurred were separated or if they committed so closely in time and place as to constitute a single period of aberrant behavior and I think I've already addressed that. Your addiction can't be considered[,] the timeframe of your addiction can certainly not be considered as justifying finding that anything you did during that addiction constitutes one ongoing act of, one ongoing criminal act. Consider the number of victims, consider the number of convictions, considering specifically . . . the 3(d) and the 3(c) [Yarbough] guidelines, and this Court can conclude nothing other than that a consecutive sentence is not only justified but warranted in imposing sentence here. And again that is a terribly sad yet inescapable reality of what we're dealing with here today.

That's not something which I exercise any control whatsoever. . . . So the aggravating factors substantially outweigh the mitigating factors I have placed, I believe or I've articulated the [Yarbough] factors that I find require these sentences to run . . . consecutive to the sentence that you're presently serving and accordingly, I have imposed that sentence.

The court concluded that Yarbough required that defendant's sentences be imposed consecutively to each other and to the prior forty-year sentence. It sentenced defendant to the same aggregate seventy-year sentence subject to an eighty-five percent parole disqualifier under NERA. Thus, the court's sentence denies defendant the opportunity for parole until he reaches one hundred and two years of age.

Defendant again appealed his sentence, arguing that the resentencing court failed to consider the overall fairness of the sentence. In particular, defendant claimed it was error for the court not to consider that his forty-year sentence already ensured that he would be of advanced age and, as such, unlikely to re-offend upon release. On October 22, 2019, the Appellate Division affirmed defendant's sentence by summary order, holding that defendant's sentence was not manifestly excessive or unduly punitive and did not constitute an abuse of discretion.

Defendant petitioned for this Court's review and we granted certification. 241 N.J. 91 (2020). We also granted amicus curiae status to several participants.

## II.

Defendant maintains that he is entitled to a remand for resentencing because the trial court, in opting to impose his sentences consecutively to each

12

other and to his existing forty-year sentence, failed to weigh the fairness of his aggregate sentence in terms of its real-time consequences. Defendant argues that courts must evaluate a proposed sentence in the context of an offender's age and that failure to do so undermines the goal of individualized sentencing. In particular, defendant asks this Court to require sentencing courts to evaluate the proportionality of a sentence that is likely to deny a defendant the opportunity for parole within his natural life span. Defendant argues that the trial court failed to consider the proportionality of a sentence that, by denying him an opportunity for parole until he would be more than one hundred years old, effectively guarantees he will never be released from prison.

Defendant also argues that a court's decision to impose consecutive or concurrent sentences under Yarbough should weigh the sentencing goals of deterrence and incapacitation. In support of this argument, defendant cites a series of studies and research papers suggesting that there is minimal deterrent benefit gained by extending an already lengthy sentence. Defendant further argues that such consideration should account for the age at which an offender would have the opportunity for parole. Defendant maintains that contemporary social science supports the view that an incarcerated individual will be unlikely to reoffend if released at an advanced age, and that weighing the fairness of a sentence requires consideration of that diminished likelihood

13

of re-offense.  Defendant argues that the trial court's sentencing decision failed to consider that he had already been sentenced to a forty-year term that denied him parole until age seventy-seven, an age at which individuals are statistically less likely to reoffend.

The State maintains that the various considerations defendant proposes -- fairness, proportionality, deterrence, and recidivism -- are already required components of a court's sentencing decision.  The State notes that this Court clarified in State v. Rogers, 124 N.J. 113 (1991), that aggravating and mitigating factors should be weighed prior to determining whether sentences should be imposed concurrently or consecutively.  The State suggests that requiring reconsideration of those factors after weighing the Yarbough factors would reduce the latter to a threshold test.

The State further argues that defendant's proposed special considerations for offenders who may be elderly upon release from incarceration would transform individualized sentencing decisions into broad generalizations based on age.  The State maintains that the resentencing court provided a statement of reasons for its sentence and that the sentence was supported by several applicable Yarbough factors.  Finally, the State argues that a sentencing court cannot realistically evaluate a defendant's potential for recidivism at a future

point in time -- in this case, defendant's likelihood of reoffending after serving his existing forty-year sentence.

Amicus curiae the Attorney General argues that fairness is already a required consideration in sentencing and that weighing the appropriateness of a sentence based on uncertain estimates of life expectancy would be impractical. The Attorney General suggests that relying on life expectancy would produce different sentences based on an individual's gender, race, or socioeconomic status and would, on average, result in younger offenders receiving lengthier sentences. The Attorney General, like the State, questions the practicality of predicting recidivism risk at a future point in time.

Amicus curiae the American Civil Liberties Union of New Jersey (ACLU) argues that the trial court's finding of aggravating factors three (the risk that the defendant will commit another offense) and nine (the need for deterring the defendant and others from violating the law) was unmoored from the facts before it. The ACLU suggests that aggravating factor nine was unsupported by facts in the record and alleges that courts consistently find factor nine even in the absence of an articulable reason for specific or general deterrence. The ACLU argues that the court's finding of aggravating factor three squarely conflicted with social science research suggesting that older offenders are less likely to reoffend.

Also before this Court as amicus curiae is a group of professors of criminology who argue that a Yarbough analysis must consider the fairness of the aggregate sentence imposed. The professors reinforce the scientific assertions of defendant and the ACLU, namely that older offenders are less likely to re-offend upon release and that there are diminishing returns from extending an already lengthy sentence.

### III.

### A.

Prior to the enactment of the New Jersey Criminal Code, sentencing decisions were guided by the view that "punishment should fit the offender as well as the offense." State v. Ivan, 33 N.J. 197, 200 (1960). The sentencing philosophy at the time "balanced the defendant's capacity for rehabilitation with the other purposes of punishment" and "tended to view the crime itself as only one factor among many to consider at sentencing." State v. Hodge, 95 N.J. 369, 378 (1984). To facilitate such defendant-oriented sentencing decisions, discretion to determine a sentence within the statutory range largely rested with the trial court. Ivan, 33 N.J. at 201. Judges were tasked with "establish[ing] a priority among the philosophical justifications for punishment." State v. Roth, 95 N.J. 334, 346 (1984); see also id. at 345-56 (reviewing the history of sentencing theory in New Jersey). The then-

16

prevailing emphasis on reformation and rehabilitation fostered the view that concurrent sentencing "increased the flexibility available to prison officials to determine prisoners' release dates based on rehabilitation." Yarbough, 100 N.J. at 637. However, dissatisfaction grew with this sentencing regime, whose critics suggested that it produced inconsistent and arbitrary results. See Roth, 95 N.J. at 348-51.

In 1968, the Legislature began efforts to recodify the state's criminal statutes, including those governing sentencing. Those efforts led to the creation of the New Jersey Criminal Law Revision Commission (the Commission), which was directed to draft a code that would "modernize the criminal law to embody principles representing the best in modern statutory law and to revise and codify the law in a logical, clear and concise manner." L. 1968, c. 281.

In 1971, the Commission issued its final draft and report to the Governor and Legislature. 1 Final Report of the New Jersey Criminal Law Revision Commission (Final Report) (1971). In relevant part, the Final Report expressed that determinations regarding "the problem of consecutive sentences[] . . . should not be left entirely to shifting and contradictory disposition by judges." 1 Final Report, at ix. However, the Final Report's resolution of the multiple-offenses question generally preserved the discretion

of trial courts by providing that when an offender is sentenced to imprisonment for more than one offense, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence." 1 Final Report § 2C:44-5, at 156-58. The Legislature codified that recommendation through its enactment of the Code. See L. 1978, c. 95; N.J.S.A. 2C:44-5.

The Legislature nonetheless made it clear that a "paramount goal" in enacting the Code was to achieve greater uniformity in sentencing. Roth, 95 N.J. at 369. The Legislature was also guided by "the concept that punishment of crime [should] be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential." Yarbough, 100 N.J. at 636-37. Under the Code, "the severity of the crime is now the single most important factor in the sentencing process." Hodge, 95 N.J. at 378-79. The Code features a set of stated purposes and principles of construction, including the purposes of its sentencing provisions. Those are:

> (1) To prevent and condemn the commission of offenses;
>
> (2) To promote the correction and rehabilitation of offenders;
>
> (3) To insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection;

18

(4) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(5) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(6) To differentiate among offenders with a view to a just individualization in their treatment;

(7) To advance the use of generally accepted scientific methods and knowledge in sentencing offenders; and

(8) To promote restitution to victims.

[N.J.S.A. 2C:1-2(b).]

The Code also provides that wherever it confers discretion upon trial courts, that discretion "shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes stated in [N.J.S.A. 2C:1-2.]" N.J.S.A. 2C:1-2(c).

Beyond those general principles, however, the Code did not and does not indicate what considerations courts should look to in deciding whether to impose sentences consecutively or concurrently. And although pre-Code decisional law recognized that courts were empowered to impose consecutive sentences for multiple crimes, see, e.g., State v. Maxey, 42 N.J. 62, 65-66 (1964), no guidance existed on when it was appropriate to do so, Yarbough, 100 N.J. at 636 n.3. That absence of guidance was characterized in Yarbough as "undermin[ing] both the objective of fair allocation of punishment and the

19

principle of retribution." Id. at 638 (quoting Harvey S. Perlman & Carol G. Stebbins, Implementing an Equitable Sentencing System: The Uniform Law Commissioners' Model Sentencing and Corrections Act, 65 Va. L. Rev. 1175, 1221 (1979)).

Yarbough represented this Court's first attempt to formulate guidance for courts deciding whether sentences should be made consecutive or concurrent when imposed under the Code. Id. at 630.

B.

The Yarbough Court's point of departure was the observation "that the Legislature premised the Code on 'the concept that punishment of crime [should] be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential, and that in dispensing that punishment, our judicial system should attain a predictable degree of uniformity.'" Liepe, 239 N.J. at 372 (alteration in original) (quoting Yarbough, 100 N.J. at 636-37).

To advance those principles, Yarbough identified a series of factors for sentencing courts to consider as a guide when determining whether to make sentences run concurrently or consecutively. The Court canvassed the approaches suggested by scholars, or taken by other jurisdictions confronting this issue, Yarbough, 100 N.J. at 639-43, and determined, ultimately, to follow

20

the criteria set forth in the federal Comprehensive Crime Control Act of 1984,

Pub. L. No. 98-473, 98 Stat. 2017, id. at 643-45.  The Court adopted the

following factors:

> (1)  there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2)  the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3)  some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a)  the crimes and their objectives were predominantly independent of each other;
> >
> > (b)  the crimes involved separate acts of violence or threats of violence;
> >
> > (c)  the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
> >
> > (d)  any of the crimes involved multiple victims;
> >
> > (e)  the convictions for which the sentences are to be imposed are numerous;
>
> (4)  there should be no double counting of aggravating factors;
>
> (5)  successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

21

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[Ibid.]

Those criteria were chosen because the Yarbough Court determined that they provided the closest fit to an "ideal" that may not have been overtly expressed in the Code but came closest to the "broad outlines of a solution" that advanced the Code's purposes.  Id. at 639 ("That source for a model of sentencing upon which our Code was most closely based posits that it would be senseless 'to give the criminal "free" crimes after a certain number,' and suggests that the best solution would be 'to devise a sophisticated system in which every additional crime in a series carried an increment of punishment but not the full increment of a consecutive sentence."  (quoting Twentieth Century Fund Task Force on Crim. Sent'g, Fair and Certain Punishment 27-28 (1976))).  The Yarbough Court found the Federal Sentencing Commission's model to offer such a solution because the Commission was charged with enacting "guidelines [that] reflect the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is either convicted of multiple offenses committed in the same course of conduct or multiple offenses committed at different times," and because the

22

Commission's guidelines "reflect[ed] some of the common concerns expressed in the various models of sentencing reform . . . promulgated over the last two decades." Id. at 642-43.

The factors and principles identified in Yarbough seemed to hit the mark with one exception: factor six, which established an outer limit to the accumulation of consecutive sentences, was expressly disapproved by the Legislature. In 1993, the Legislature amended N.J.S.A. 2C:44-5(a) to clarify that "[t]here shall be no overall outer limit on the cumulation of consecutive sentences for multiple offenses." L. 1993, c. 233, § 1.

Other than that rejection of the sixth factor originally identified in Yarbough, the Legislature has otherwise neither altered section 44-5 nor codified the remaining Yarbough factors. Where this Court's construction of a statute is "supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, [that] is evidence that such construction is in accordance with the legislative intent." Barringer v. Miele, 6 N.J. 139, 144 (1951). Such an inference is particularly weighty in light of the Legislature's explicit rejection of factor six. The precision of the legislative reaction clarifying section 44-5 to eliminate Yarbough's sixth factor may reasonably be interpreted as tacit approval of the remaining five factors.

C.

With respect to the substantive evaluations to be made concerning a court's concurrent-versus-consecutive-sentence determination, it bears noting that, unlike some other states' sentencing laws or promulgated sentencing guidelines, our Code does not contain a presumption in favor of either concurrent or consecutive sentences.[6]  The five extant Yarbough factors that guide courts on whether to impose concurrent or consecutive sentences for multiple offenses have been categorized as follows.

Factors two, four, and five do not relate directly to the facts of the offense and hence have little utility in the threshold assessment of whether to impose consecutive or concurrent sentences.  See Carey, 168 N.J. at 423 (calling these factors "procedural" in nature).

---

[6]  Many states have a presumption that sentences be imposed consecutively, see, e.g., Va. Code Ann. § 19.2-308, while others presume concurrent sentencing, see Mo. Rev. Stat. § 558.026(1); Wash. Rev. Code § 9.94A.589(1).  Other states have developed sentencing guidelines that soften the distinction between concurrent and consecutive sentencing by providing for partial sentences.  For example, Utah's Sentencing Commission recommends that sentences imposed concurrently or consecutively add 10% or 40% of the recommended sentence, respectively, to the full recommended length of the longest sentence.  Utah Sent'g Comm'n, Adult Sentencing & Release Guidelines, at 17-18 (Mar. 1, 2020).  Louisiana's guidelines similarly provide that a sentence imposed consecutively should add no more than 50% of the minimum sentence length for that offense.  La. Admin. Code tit. 22, pt. 9, § 215(C)(2).

24

Factor one under Yarbough has been described as "tilt[ing] in the direction of consecutive sentences because the Code focuses on the crime, not the criminal." Ibid. However, it is factor three that contains the evaluative core to a Yarbough analysis:  it identifies five sub-factors that "generally concentrate on such considerations as the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims." State v. Baylass, 114 N.J. 169, 180 (1989).  It is by weighing those considerations that a court determines whether this factor "renders the collective group of offenses distinctively worse than the group of offenses would be were that circumstance not present." Carey, 168 N.J. at 428 (quoting People v. Leung, 7 Cal. Rptr. 2d 290, 303 (Ct. App. 1992)).[7]  Beyond listing those informative factors, though, Yarbough does not direct an outcome, remaining true to the Code's failure to create either a presumption of consecutive or concurrent sentences for multiple offenses, against which the factors are to be considered.

---

[7] In making that statement, Carey relies on California's experience, but it bears noting a difference in the California scheme applicable for sentencing an offender on multiple offenses.  California employs a statutory scheme of sentencing enhancements which may be used when incrementally adding consecutive sentences to the first felony, and the scheme contains an outer limit.  See Yarbough, 100 N.J. at 639.

That lack of a direction for a starting assumption, to the extent that it is problematic for promoting uniformity in sentencing, is compounded by the elimination of Yarbough's original factor six. Insofar as the Yarbough factors were created to work together as a cohesive whole, that whole was conceived of as including an overall outer limit -- an ending assumption. Because that outer check no longer exists, the analysis of the remaining evaluative subfactors is unmoored to any starting or ending sentencing guidepost.

Appellate review remains the final check on the discretion allotted to the sentencing court. Thus, Yarbough's second factor requires a sentencing court to place on the record its statement of reasons for the decision to impose consecutive sentences, which statement, we have directed, should focus "on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted." State v. Miller, 108 N.J. 112, 122 (1987).

IV.

In this appeal, defendant argues that the resentencing court did not properly consider and explain the overall fairness of the sentence imposed when the court made defendant serve his aggregate thirty-year sentence for the 2006 and 2009 robberies consecutive to the forty-year sentence he had already received for the 2010 and 2011 robberies. As defendant argues, although the

26

court presented its analysis of the facts of his crimes, it did not include an explicit assessment of the overall fairness of imposing the sentence consecutively to defendant's previously imposed forty-year sentence.

A.

An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment. It is the necessary second part to a Yarbough analysis, as Miller emphasized. 108 N.J. at 122 (noting importance of Yarbough factor two -- placing reasons for consecutive sentence on record). Acknowledging and explaining the fairness of the overall sentence imposed on the defendant advances critical sentencing policies of the Code, as amplified by Yarbough. It remains, in fact, the critical remnant of accountability imposed by Yarbough, since the legislative elimination of the outer limit imposed by factor six.

Yarbough explicitly stated that the imposition of a sentence, notwithstanding that multiple offenses are involved, "concerns the disposition of a single, not a multiple, human being." 100 N.J. at 646 (quotation omitted). Miller reiterated that the required explanation of overall fairness promotes proportionality in sentencing when a court imposes sentence for multiple

offenses on the single person who is subjected to the accumulated punishment. 108 N.J. at 121.

Yarbough did not supplant the "long-standing common-law principle" that "sentencing courts have discretion to impose consecutive sentences in appropriate cases." State in Interest of T.B., 134 N.J. 382, 385 (1993). The Yarbough criteria were adopted to channel that discretion, not to withdraw it. Evaluating the factors mechanically risks deviating from our guidance that "[t]he Yarbough factors are qualitative, not quantitative; applying them involves more than merely counting the factors favoring each alternative outcome." State v. Cuff, 239 N.J. 321, 348 (2019). That caveat applies also to the "no free crimes" factor identified in Yarbough, and often seized upon by sentencing courts searching for greater direction in this area. Again, that initial factor was included in a set of considerations that originally included an outer limit; the Legislature's elimination of Yarbough's outer limit does not transform that first factor into a blanket mandate that consecutive sentences be imposed. Courts must remain mindful that the discretion to sentence for multiple offenses runs in two directions, allowing concurrent sentencing as well as consecutive sentencing for the multiple offenses for which one defendant is being sentenced.

This Court has made clear that while Yarbough guides a court's sentencing decision, it does not control it. Although, as we have acknowledged, courts may impose, and have imposed, consecutive sentences where a defendant's crime resulted in the death of multiple victims, see, e.g., Carey, 168 N.J. at 428-30; State v. Molina, 168 N.J. 436, 442-43 (2001), Yarbough neither mandates nor presumes such a result, Liepe, 239 N.J. at 377-78 (noting the absence of a presumption in favor of consecutive sentences even where the multiple-victims factor is met). Instead, a "sentencing court's determination regarding consecutive and concurrent terms . . . turns on a careful evaluation of the specific case." Ibid.

In sum, while the Code is animated by the overarching goal of ensuring "a predictable degree of uniformity in sentencing," Yarbough, 100 N.J. at 630, uniformity and predictability should not come at the expense of fairness and proportionality. We reiterate the repeated instruction that a sentencing court's decision whether to impose consecutive sentences should retain focus on "the fairness of the overall sentence." Miller, 108 N.J. at 122; see also State v. Abdullah, 184 N.J. 497, 515 (2005). Toward that end, the sentencing court's explanation of its evaluation of the fairness of the overall sentence is "a necessary feature in any Yarbough analysis." Cuff, 239 N.J. at 352.

29

B.

In defendant's resentencing proceeding, an explanation of the overall fairness of the consecutive sentence imposed on him was lacking. The court identified <u>Yarbough</u> factors as present, or not, and concluded that because the facts of defendant's crimes presented circumstances that permitted consideration of consecutive sentences, the court <u>had</u> to impose a consecutive sentence. In that respect, any lament that the court had no choice was mistaken.

The <u>Yarbough</u> analysis does not rely on ticking off the <u>Yarbough</u> factors. The mere identification of <u>Yarbough</u> factors as present when recounting the facts of defendant's offenses is no substitute for the required fairness assessment. Here, the lack of any overall assessment of the fairness of the decision to impose defendant's thirty-year aggregate sentence for the 2006 and 2009 robberies consecutive to his existing forty-year sentence for the 2010 and 2011 robberies compels us to reverse defendant's sentence and remand for a new resentencing.

C.

A sentencing court's imposition of consecutive sentences for multiple offenses must not only be procedurally correct, it must also be free from any scent of pervading unfairness. <u>Yarbough</u> eschewed an approach that called for

30

accumulation of punishments based on rote counting of maximum punishments for criminal transactions. 100 N.J. at 639. Instead, <u>Yarbough</u> embraced an approach that incorporated proportionality concerns. <u>Id.</u> at 647. Due to the complexity of sentencing for multiple offenses in either the same or separate sentencing proceedings, no formulaic solution was generally accepted -- not then when <u>Yarbough</u> was decided, and not even now.[8] But, to assist courts in this area of discretionary sentencing, the <u>Yarbough</u> factors promote consistency by identifying certain facts to consider when evaluating the threshold question of whether to impose concurrent or consecutive sentences for multiple offenses. And we require an explicit explanation for the overall fairness of a sentence, in the interest of promoting proportionality for the individual who will serve the punishment.

Particularly when imposing a lengthy consecutive sentence -- here, multiple maximum sentences on top of an already long sentence -- the explanation of the overall fairness of a sentence to be imposed serves to validate a court's decision by contextualizing the individual sentences' length,

---

[8] The evaluation of multiple sentences for multiple offenses is a bedeviling topic presently challenging sentencing commissions across the nation, as noted by the American Law Institute. At present, there is reported to be no consensus in approach by sentencing commissions at the state level. <u>See</u> <u>Model Penal Code: Sentencing</u> § 6B.08, Reporters' Note (Am. Law Inst., Proposed Final Draft 2017).

31

deterrent value, and incapacitation purpose and need.  Such explicit considerations and explanations are invaluable to support the choice to impose a consecutive sentence, which will often increase the real time a defendant spends in custody as much as a decision to impose a sentence at the top of the sentencing range for an individual offense among several being imposed.

Furthermore, although the evaluation of aggravating and mitigating factors occurs when setting the sentence within the range applicable to each offense, see Rogers, 124 N.J. at 119, sentencing is a holistic endeavor.  A court performing the Yarbough fairness assessment must be mindful that aggravating and mitigating factors and Yarbough factors, as well as the stated purposes of sentencing in N.J.S.A. 2C:1-2(b), in their totality, inform the sentence's fairness.  All are relevant to the overall fairness of the aggregate sentence imposed on the sole defendant before the court.

The sentencing court's explanation of overall fairness provides a proper record for appellate review of the sentencing court's exercise of discretion.  Appellate courts employ the general shock-the-conscience standard for review of the exercise of sentencing discretion in the arena of consecutive-versus-concurrent sentencing.  See Roth, 95 N.J. at 364-65.  But although the standard is deferential, that review is critical:  at present, no guidelines have been created by the Legislature or been recommended by the Legislature's currently

32

empaneled sentencing commission;[9] appellate review of lengthy consecutive sentences is therefore the only check for pervading unfairness.

To facilitate that vital review -- and to eliminate any possibility of lingering doubt -- we hold that an explanation for the overall fairness of a sentence by the sentencing court is required in this setting, as in other discretionary sentencing settings, to "foster[] consistency in . . . sentencing in that arbitrary or irrational sentencing can be curtailed and, if necessary, corrected through appellate review." State v. Pierce, 188 N.J. 155, 166-67 (2006). Failure to police the fairness of consecutive sentences not only undermines Yarbough's goal of promoting predictability and uniformity in sentencing, but also risks deviating from the Legislature's command that the Code be construed so as to "safeguard offenders against excessive, disproportionate or arbitrary punishment." N.J.S.A. 2C:1-2(b)(4).[10]

---

[9]  We note that the New Jersey Sentencing Commission has completed some of its work, but more remains to be done. To the extent that some arguments advanced in this appeal are policy oriented, they are better addressed to the Legislature and the Sentencing Commission.

[10]  Appellate courts naturally have been reserved in finding the shock-the-conscience standard met, even in circumstances involving extremely lengthy aggregated consecutive sentences. However, the standard is not an insurmountable one, and appellate courts should bear that in mind when reviewing lengthy, aggregated consecutive sentences where the sentencing court has so few guideposts, and no outer limit, on which to rely.

V.

Defendant and amici argue that age must be a consideration when a sentencing court decides whether to impose consecutive sentences. To be sure, the fairness of a sentence cannot be divorced from consideration of the person on whom it is imposed. Yarbough expressly noted that sentencing must take into account the single person being subjected to the sentence imposed and linked that reality to proportionality in sentencing. 100 N.J. at 646-47.

A defendant's age is doubtlessly among the information that courts should consider when calibrating a fair sentence. Assessing the overall fairness of a sentence requires a real-time assessment of the consequences of the aggregate sentences imposed, which perforce includes taking into account the age of the person being sentenced. But age alone cannot drive the outcome. An older defendant who commits a serious crime, for example, cannot rely on age to avoid an otherwise appropriate sentence.

This fairness assessment does not call for speculation or divination about the defendant's future behavior, however; the court sentences the defendant "as the defendant appears before the court on the occasion of sentencing." Richardson v. Nickolopoulos, 110 N.J. 241, 252 (1988). Nor does it require courts to engage in a life-expectancy analysis, an area that raises various concerns that need not be explored here. Cf. State v. Zuber, 227 N.J. 422, 450

(2017).  Contrary to the competing arguments of the parties and the amici, we do not regard defendant as insisting on such a life-expectancy analysis.[11]  But age is a fact that can and should be in the matrix of information assessed by a sentencing court, even in the deliberation over whether consecutive sentences are a fair and appropriate punishment -- proportional for the individual being sentenced.  See, e.g., Liepe, 239 N.J. at 378-79.  Overall fairness has long been a necessary consideration to the imposition of consecutive versus concurrent sentencing.  This case highlights that the fairness assessment includes consideration of the person on whom the sentence is being imposed.

Notably, we reject any contention that taking age into account in the overall-fairness assessment is altering in any way the focus of the stated purposes of the Code.  Rather, the court is merely examining the broad parameters of the fairness of the overall sentence imposed through imposition of consecutive sentencing.  Such reasoned sentencing is consistent with the discretion reposed in the sentencing court by the Code and allows the court to justify its sentence as fulfilling the Code's general sentencing purposes.

---

[11]  We note that the Sentencing and Disposition Commission is slated to discuss matters related to age, recidivism, and timing of reviews for release. The arguments and social science research of the parties and amici might assist the Commission in its deliberation of recommended legislative changes.

35

We took this case because the overall length of this sentence gave us serious concern. We are unable to affirm the sentence imposed and we remand for meaningful review and resentencing utilizing the principles contained in this opinion.

## VI.

The judgment of the Appellate Division affirming defendant's sentence is reversed. The matter is remanded for a new resentencing proceeding.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.